PHILIP PALMER & another vs. PAWTUCKET MUTUAL
INSURANCE COMPANY.

Plymouth.   March 9, 1967. — April 3, 1967.

Present: WILKINS, C.J., WHITTEMORE, CUTTER, SPIEGEL, & REARDON, JJ.

Insurance, Construction of policy, Insurance against freezing.

Any ambiguity in an insurance policy is resolved against the insurer, and
an exclusion from its coverage is to be strictly construed.   [306]

Under a "homeowners" policy of insurance excluding from its coverage
"loss resulting from freezing while the . . . [house was] vacant . . .
unless the insured . . . [should] have exercised due diligence with re-
spect to maintaining heat" in the house or unless the plumbing and
heating systems and appliances therein had been drained, a loss sus-
tained when the fluid in its hot water heating system froze and caused
pipes to burst while the system was turned off and the insured was away
for the fourth consecutive winter was covered by the policy for the
reason that the insured had exercised such diligence where it appeared
that on his first winter's absence the insured had consulted a licensed
heating contractor who advised him "that the proper way to protect this
system was to install anti-freeze in sufficient quantity to prevent
freezing; that he was thoroughly familiar with . . . [and] had used
this method . . . without experiencing damage to any system; and that
this was an accepted method practiced in the community," and that the
contractor had applied that method to the insured's house in the first
three winters without incident and again in the winter of the loss.
[306–307]

CONTRACT.   Writ in the Superior Court dated July 3,
1963.

The case was reported by Cahill, J., without decision.

Laurence S. Fordham for the plaintiffs.

Stephen J. Paris for the defendant.

CUTTER, J.   Palmer and his wife, owners of a house in
Marshfield, were issued a "homeowners" policy of insur-
ance written by the defendant (the insurer).   The policy
covered their real estate and personal property in the house
against varied risks.   During the winter of 1962–1963, the
fluid in the hot water system froze and caused pipes to

burst. The damage of $3,335.13 was within the broad coverage of the policy, unless the insurer is relieved of liability by § 5 of the portion of the policy describing the perils against which insurance is provided. Section 5 excluded from coverage "loss resulting from freezing while the described building(s) is vacant or unoccupied, *unless the insured shall have exercised due diligence with respect to maintaining heat in the building(s),* or unless the plumbing and heating systems and domestic appliances had been drained and the water supply shut off during such vacancy or unoccupancy" (emphasis supplied).

The matter is presented upon a case stated. A judge of the Superior Court, without making a decision, reported this action of contract for our determination.

In December, 1962, the Palmers, in accordance with their custom since 1959, left the house to spend the winter in Boston. Their furniture and other tangible property remained in the house. Each winter after 1959, including that of 1962–1963, the Palmers returned on occasions to the house "to pick up clothing . . . and to make a general inspection . . . but did not sleep or eat" there. During March, 1963, the Palmers were away from Massachusetts. They returned to the house on April 2. Their last prior visit to the house was about February 21.

In 1959, the first winter in which the Palmers were away, they consulted one Schultz, a licensed heating contractor. He told them that the "hot water heating system could not be adequately or completely drained" and "that the proper way to protect this system was to install anti-freeze in sufficient quantity to prevent freezing; that he was thoroughly familiar with this method of preventing freezing of house heating systems; that he had used this method in his trade for many years without experiencing damage to any system; and that this was an accepted method practiced in the community. Relying upon . . . [his] advice the . . . [Palmers], in 1959, retained . . . [his c]ompany . . . to install anti-freeze in the hot water system sufficient to protect the system during their absence. . . . [He] did install

anti-freeze in the system in an amount which, in his judgment, was sufficient and the system did not freeze and no damage to it occurred during . . . that winter.''

In the winters of 1960–1961 and 1961–1962 the Palmers retained the same company ''to test the system and, if necessary, to add anti-freeze to the anti-freeze already in the system in an amount sufficient to keep the system from freezing during the winter months. This method . . . was employed . . . without incident during'' those winters. ''In each of these three years the heating system was turned off.''

The same course was followed in 1962–1963. The fluid was tested and anti-freeze was added. The heating system was turned off from December, 1962, to April, 1963. No damage was apparent when the Palmers visited the house in January and February, 1963. No other persons used the premises during the winter.

Ambiguities in the policy are to be construed against the insurer. *Schroeder* v. *Federal Ins. Co.* 343 Mass. 472, 475. *Whitney* v. *American Fid. Co.* 350 Mass. 542, 544. Exclusions from coverage are to be strictly construed. *Vappi & Co. Inc.* v. *Aetna Cas. & Sur. Co.* 348 Mass. 427, 431. Where the language permits more than one rational interpretation, that most favorable to the insured is to be taken. *Joseph E. Bennett Co. Inc.* v. *Fireman's Fund Ins. Co.* 344 Mass. 99, 103. In interpreting § 5, these principles must be applied. We think that on a permissible, rational interpretation of § 5, the insurer cannot prevail.

Obviously the pipes were not drained. We do not consider whether the house was ''unoccupied'' within the meaning of § 5. See e.g. *Hemenway* v. *American Cas. Co.* 215 F. Supp. 103, 104–105 (W. D. La.). We think that our decision should be controlled by the somewhat ambiguous fine print provision, ''unless the insured shall have exercised due diligence with respect to maintaining heat in the building(s).'' The Palmers had consulted a licensed heating contractor. He had advised, and had himself applied, the method of protecting the pipes which was in fact

adopted. The reasonable implication of his advice was that the adoption of this method would require no heat in the house. For this reason, we hold that the Palmers "exercised due diligence *with respect to* maintaining heat" (emphasis supplied).

We are bound by no Massachusetts decision which covers this situation. If the insurer had wished to exclude the use of anti-freeze by a licensed heating contractor as a method of complying with the obligation of "due diligence" in § 5, a more explicit prohibition of that method should have been stated. It is agreed that Schultz advised the Palmers "that this was an accepted method practiced in the community." The case stated contains no indication to the contrary. Judgment is to be entered for the plaintiffs in the sum of $3,335.13, with interest from the date of the writ.

*So ordered.*