McDonald, C. Brian, J.
As the court (Locke, J.) determined that Massachusetts law applied, which determination was affirmed by this court [21 Mass. L. Rptr. 649]; as, therefore, the defendant was obliged to prove that the plaintiffs decedent made statements on his applications for life insurance policies issued by the defendant that were “willfully false, fraudulent, or misleading,” G.L.c. 175, §124; as the decedent failed to reveal the true nature of his health problems on his applications, the application questions not permitting the decedent a subjective view as to severity or significance of such problems; as the decedent’s blood pressure problems for which he was on medication and for which he was regularly monitored by his physicians were not reported to the defendant, although the decedent could not have been unaware of the purpose of such medication and of the frequency of his physicians’ visits to be monitored for his blood pressure problems, notwithstanding that medical records reveal that on occasions his blood pressure was within normal limits; as the decedent’s chronic obstructive pulmonary disease (“COPD”) was not reported to the defendant, although the disease was long-standing, gave rise to frequent complaints to his physicians of respiratory problems, prompted complaints of respiratory problems in March of 2001, which led to a diagnosis of COPD by his physician, which led to an x-ray to explore COPD, which led to a CT scan because the x-ray was not conclusive, which was confirmed by the CT scan, which scan occurred just nineteen days before the decedent’s first application for insurance was submitted, and which resulted in the advice from his physician that an abnormality revealed by the CT scan also might indicate lung cancer; as, in light of the chronic nature of the decedent’s COPD, the decedent’s frequent complaints of respiratory problems, and especially the March 2001 CT scan which in addition to confirming COPD and bullous emphysema, resulted in a discussion of possible lung cancer, the jury could not reasonably have inferred that the decedent’s diseases or disorders of the respiratory system were likely overlooked or forgotten by him nineteen days later when applying for life insurance; as the COPD and bullous emphysema were confirmed by a second CT scan in October 2001; as, in light of this confirmatory CT scan, performed at least in part in order to explore the possibility of lung cancer detected in the earlier CT scan, the jury could not reasonably have inferred that the decedent’s COPD and bullous emphysema were likely overlooked or forgotten by him eight months later when applying for life insurance; as the decedent failed to report diagnostic tests conducted within five years of his applications, most significantly CT scans done within nineteen days of the first application and within eight months of the second application, which scans are not routine medical procedures and of which the first detected possible lung cancer and second was a follow-up test to determine whether a cancer was present, no conclusive diagnosis appearing in the medical records following this second CT scan, the jury could not reasonably have inferred that the tests were likely overlooked or forgotten by the defendant; as the decedent failed to report his chronic prostatitis to the defendant, for which he was treated by a urologist as recently as June of2000, the jury could not reasonably have inferred that his prostatitis was likely overlooked or forgotten or not recognized as a disease or disorder of the urinary tract; as the decedent falsely reported to the defendant that he had had a physical in June 2001, two months before his first application, and was “100% fine,” he neither having seen his physician then nor been told he was “ 100% fine,” and having no basis in fact to assert such condition; as the decedent falsely reported ten months later that he had seen his doctor in June 2002 and again was “100% fine," he neither *140 having seen his physician then nor been told he was “100% fine,” and having no basis in fact to assert such condition; as the decedent’s medical records indicate that at least from 1993 he never was 100% fine — not in the judgment of any physician and not in his own judgment given the nature and frequency of his complaints to his physicians; as the decedent falsely reported to the defendant that he did not suffer from back problems, notwithstanding that he was using, and had used for a substantial period of time, narcotic pain relievers for back pain, which medication he failed to disclose to the defendant, rather, disclosing only a non-narcotic analgesic; as, in light of the decedent’s extensive medical history, reflected in extensive medical records introduced into evidence, describing the decedent’s health problems and treatments, the jury could not reasonably have inferred that the decedent had not discussed the multiple diagnoses reported in such records with the several physicians who treated him and was not aware of such diagnoses; as the decedent falsely certified on his application for a Home Certain policy, to which he clearly was not eligible, that he had taken a mortgage on his home in June 2001; as, ten months later, the decedent falsely certified that he had taken a mortgage on his home in February 2002; as, notwithstanding that the jury might have inferred some degree of complicity on the part of Sean Gray, the decedent’s son-in-law, who sold the insurance policies, the decedent was responsible for the truth of his statements on the two applications; and as, in light of the number of false statements contained in the two applications: false as to the decedent’s insurability and false as to his eligibility, nowhere in the evidence, considering all sources, exists any combination of circumstances from which the jury could reasonably have found the decedent’s conduct to have been other than willfully fraudulent, willfully false, and willfully misleading, i.e., no reasonable inference could be drawn in the plaintiffs favor, Montes v. Mass. Bay Transp. Auth., 446 Mass. 181, 182 (2000), quoting Boothby v. Texon, Inc., 414 Mass. 468, 470 (1993), the defendant met its burden pursuant to G.L.c. 175, §124 to prove the decedent’s two insurance applications were willfully fraudulent, false, and misleading, and, accordingly, Fidelity & Guaranty Life Insurance Company’s Motion for Judgment Notwithstanding the Verdict is ALLOWED.