Chow *v.* Merrimack Mutual Fire Insurance Company.

ISAAC CHOW *vs.* MERRIMACK MUTUAL FIRE INSURANCE
COMPANY.

No. 12-P-1010.

Hampshire. January 8, 2013. - May 15, 2013.

Present: COHEN, GREEN, & VUONO, JJ.

*Insurance,* Homeowner's insurance. *Contract,* Insurance, Performance and
breach. *Practice, Civil,* Instructions to jury. *Negligence,* Standard of care.
*Words,* "Unoccupied."

In a civil action arising from the denial by the defendant insurance company,
which had issued a homeowner's insurance policy to the plaintiff, of
coverage for loss incurred when pipes in the plaintiff's house froze and
burst, based on a policy exclusion for damage caused by frozen pipes if
the house was unoccupied at the time of the loss and the insured failed to
use reasonable care to maintain heat in the building, the judge committed
prejudicial error in instructing the jury that the negligence of a third party
entrusted by the plaintiff to maintain heat in the building should be imputed
to the plaintiff, where the instruction did not ask the jury to determine
whether the relationship between the plaintiff and the third party was one
of master and servant or whether the third party acted as an independent
contractor, and where the instruction did not ask the jury to consider the
degree of control the plaintiff retained over the third party's actions on the
plaintiff's behalf [625-629]; however, the judge did not err in instructing
the jury on the meaning of the term "unoccupied" appearing in the exclu-
sion [629-630].

CIVIL ACTION commenced in the Superior Court Department on
November 17, 2008.

After transfer, the case was tried before *Bertha D. Josephson,*
J.

*Mark A. Tanner* for the plaintiff.

*John E. Garber* for the defendant.

GREEN, J. Sometime during late December, 2006, or early
January, 2007, a house owned by the plaintiff and insured under
a homeowner's policy issued by the defendant incurred
substantial damage when pipes froze, and then burst, releasing

large amounts of water into the structure. The defendant denied coverage for the loss, based upon a policy exclusion for damage caused by frozen pipes if (i) the house was unoccupied at the time of the loss, and (ii) the insured failed to use reasonable care to maintain heat in the building. The plaintiff filed this action against the defendant for breach of contract and declaratory relief. After a trial, a jury returned a verdict in the defendant's favor, and this appeal followed. At issue is whether the trial judge correctly instructed the jury that the negligence of a person entrusted by the plaintiff to maintain heat in the building should be imputed to the plaintiff, so as to establish a failure by the plaintiff, himself, to use reasonable care. We conclude that the instruction was in error, and reverse the judgment.

*Background.* Beginning in 1987 and continuing until the summer of 2006, the plaintiff owned and operated a restaurant in Northampton known as the Panda Garden. When the restaurant opened, the plaintiff acquired a four-bedroom house located at 103 Rocky Hill Road in Hadley (the property), to serve as living quarters for restaurant employees.[1] The plaintiff resides in New York, but lived at the property during the period when the restaurant was first getting established. Thereafter, for so long as the restaurant was operating, the restaurant's general manager, Richard Lau, lived at the property and generally managed it, paying utility bills and addressing any maintenance needs. During the fall of 2006, Lau moved to a home he purchased in Amherst, but left various items of furniture and other personal property at the property. Other former restaurant employees found work elsewhere and moved away from the property. According to the plaintiff, however, one or two former restaurant employees stayed at the property at various times through the fall of 2006.[2] The plaintiff testified that he met with Lau in early December, 2006, to discuss various matters related to

---

[1]According to the plaintiff's trial testimony, he owned both the restaurant and the property with other business partners.

[2]There was conflicting evidence concerning the details of any occupancy of the property from August, 2006, through January, 2007. The testimony of both the plaintiff and Lau acknowledged at least that neither of the employees they described as living at the property for portions of that period were present throughout; both employees apparently moved to other unspecified locations for some periods of time.

winding up the Panda East restaurant.[3] Among the items discussed was the need to maintain heat at the property as the cold season approached. As constructed, the property was heated exclusively by means of electric baseboard heaters.[4] According to the plaintiff, he instructed Lau to maintain the thermostats at the property at sixty degrees.

In late January, 2007, the Hadley building inspector was notified that the property showed signs of water damage. His inspection of the property revealed significant flooding, caused by frozen and burst pipes. The carpets, furniture, and other items in the house were waterlogged, and ceilings had collapsed. Large icicles protruded from the exterior siding of the house. The thermostats on the baseboard heating units were turned to the "off" position.[5] The building inspector condemned the property, and notified the plaintiff.

The defendant issued a property insurance policy to the plaintiff, which was in force during the period in which the damage occurred. The policy insures against various risks of loss to the property. However, among its exclusions from coverage is loss:

"2. caused by

"a. freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This exclusion applies only while the dwelling is vacant, unoccupied or being constructed unless *you* have used reasonable care to:

"(1) maintain heat in the building; or

---

[3]According to the plaintiff, he planned to reopen the restaurant at another location, but as of the time of trial in November, 2011, the restaurant had not reopened.

[4]Sometime in 2005, Lau had also arranged for the installation of a kerosene-fueled space heater as a supplemental heating source. The plaintiff conceded in the joint pretrial memorandum and in his trial testimony that, if the electric baseboard heaters were off, it would be unreasonable to use only the kerosene heater to heat the house.

[5]Comparison of electricity bills for the months of November, December, 2005, and January, 2006, with those for the same months in 2006-2007 revealed dramatically reduced consumption during the latter period.

"(2) shut off the water supply and drain the system and appliances of water" (emphasis added).

The policy defines "you" as "the 'named insured' shown on the [d]eclarations [page] and the spouse if a resident of the same household."[6]

After a trial, the jury returned a verdict in favor of the defendant, essentially concluding that the property was unoccupied at the time of the damage, and that the plaintiff had failed to use reasonable care to maintain heat in the building. This appeal followed.

*Discussion.* The plaintiff contends that the judge erred in instructing the jury that it should attribute to him the reasonableness of actions taken on his behalf by any person to whom the plaintiff delegated responsibility to take care of the property. We agree.

Interpretation of an insurance contract presents a question of law. *Save-Mor Supermarkets, Inc.* v. *Skelly Detective Serv., Inc.*, 359 Mass. 221, 226 (1971). As a general matter, "exclusionary clauses must be strictly construed against the insurer so as not to defeat any intended coverage or diminish the protection purchased by the insured." *Camp Dresser & McKee, Inc.* v. *Home Ins. Co.*, 30 Mass. App. Ct. 318, 324 (1991).

We are aware of only one reported Massachusetts appellate decision construing an exclusion similar to the one at issue in the present case, and it did not involve a question of agency.[7] Published authority on the precise question raised by an insured's

---

[6]We reject the defendant's suggestion that Lau falls within the ambit of "you" because the policy listed "Isaac Chow % Richard Lau, 34 Pleasant St, Northampton MA 01060-4158" in the block on the policy declarations page entitled "[n]amed [i]nsured and [a]ddress." Read in context, the reference to Lau is clearly designed to provide a contact person for receipt of mail at the specified mailing address rather than to designate him as an additional named insured.

[7]In *Palmer* v. *Pawtucket Mut. Ins. Co.*, 352 Mass. 304 (1967), the Supreme Judicial Court concluded that homeowners were covered for losses due to frozen pipes, despite an exclusion (applicable to periods when the building was vacant or unoccupied) requiring the insured to exercise "due diligence with respect to maintaining heat in the building(s), or unless the plumbing and heating systems and domestic appliances had been drained and the water supply shut off." *Id.* at 305. The homeowners solicited the advice of a licensed heating contractor, who recommended that they "install anti-freeze in suf-

engagement of a caretaker to look after unoccupied property is decidedly sparse nationwide. Our research discloses only two published decisions, both declining to impute negligent acts of an agent to an insured property owner, albeit based on differing rationales.[8]

ficient quantity to prevent freezing" during their absence. *Ibid.* The homeowners directed the contractor to execute his recommendation, and thereafter no freezing occurred during the first three winters. During the fourth winter, however, pipes froze and the house was damaged. In concluding that the use of anti-freeze constituted the exercise of due diligence "with respect to maintaining heat in the building," the court observed that, "[i]f the insurer had wished to exclude the use of anti-freeze by a licensed heating contractor as a method of complying with the obligation of 'due diligence' . . . a more explicit prohibition of that method should have been stated." *Id.* at 306-307.

[8]In *International Ins. Co.* v. *R.I. Reid*, 400 S.W.2d 939 (Tex. Civ. Ct. App. 1966), the insured property owner employed a ranch foreman, whom he instructed to light fires to maintain heat in an unoccupied building, and to drain the pipes when cold temperatures risked freezing them. The Texas Court of Civil Appeals declined to impute to the owner the foreman's failure to exercise due diligence to maintain heat based upon a strict construction of the applicable policy provision, observing that "[i]f it had been the intention of the parties to require diligence of both the insured and his agent or employee, then the contract of insurance should have so provided." *Id.* at 941.

More recently, in *JMB Enterprises* v. *Atlantic Employers Ins. Co.*, 228 N.J. Super. 610 (1988), the Appellate Division of the New Jersey Superior Court relied on the Restatement (Second) of Agency Title B, scope notes at 480 (1958), in concluding that negligent acts of an independent contractor (as compared to an employee) generally will not be imputed to his principal under principles of respondeat superior. See *id.* at 617-618. The court observed that an agent may often have authority to bind his principal in contract, yet not have his actions imputed to the principal for purposes of imposing liability in tort. See *id.* at 618.

The defendant's reliance on an unpublished decision of the Court of Appeals of Ohio for a contrary conclusion is unavailing. In Ferrell *vs.* Nationwide Mutual Ins. Co., Ohio Ct. App. 8th Dist., No. 95649 (July 7, 2011), the court concluded that an insured property owner was not entitled to coverage for losses caused by frozen pipes. In so doing, the court affirmed a conclusion that the negligence of the owner's property manager should be imputed to the owner because the property manager was the owner's agent. The opinion did not explain its conclusion to that effect, however; the court's analysis instead was directed to the question whether the "property manager," who was also the tenant of the property, was properly considered the owner's agent. *Ibid.* The court also observed that the owner herself "did not do anything in regard to the maintenance of the property. She was not aware of the specifics between [the property manager] and [his subtenant] and, in fact, was not even aware that [the property manager] had asked [the subtenant] to vacate the property." *Ibid.* "Thus, the trial court's finding that [the owner] did not act with reasonable care was proper." *Ibid.*

In the present case, though the parties and the judge correctly recognized that the question whether Chow used reasonable care to maintain heat in the building turned in part on the extent to which Lau's actions could be imputed to him, we conclude that the judge's charge to the jury incorrectly framed the issue.[9]

As a threshold matter, we observe that the question whether a party to a contract has satisfied a contractually imposed duty to use reasonable care is tested by reference to ordinary principles of negligence. See *Herbert A. Sullivan, Inc.* v. *Utica Mut. Ins. Co.*, 439 Mass. 387, 402-403 (2003). The further question whether a principal may be held vicariously liable for the failure of his agent to use reasonable care depends on the nature of the relationship between the principal and the agent. When a master-servant relationship exists between a principal and his agent, the principal may be held liable for the acts of his agent under the doctrine of respondeat superior. See *Corsetti* v. *Stone Co.*, 396 Mass. 1, 9-11 (1985); *Hohenleitner* v. *Quorum Health Resources, Inc.*, 435 Mass. 424, 431-432 (2001).[10] By contrast, "[g]enerally speaking, the employer of an independent contractor is not liable for harm caused to another by the independent

---

[9]The judge instructed the jury as follows:

"Now I also must tell you that a person who is an agent for another person and performs duties at that person's directions, takes on essentially the place of the person for whom he's acting. By that I mean, a principal is liable for the acts of his agent in carrying out that principal's directions or in accomplishing the principal's business.

"Generally the principal is liable if the acts of the agent or the principal is responsible for those acts, if the acts of the agent are done in the course of doing a principal's business and for the purpose of accomplishing it.

"In considering whether reasonable care was used in this case, if Mr. Chow, the owner of the house, allowed someone else to act on his behalf in taking care of the house, then you may consider the reasonableness of the care used by that caretaker and the reasonableness of Mr. Chow in directing the individual."

[10]The court in *Hohenleitner, supra* at 432 n.5, observed that a then tentative draft of the Restatement (Third) of Agency departed from the traditional terminology of "master" and "servant" in favor of "employer" and "employee." The linguistic departure persisted into the version eventually adopted. See Restatement (Third) of Agency § 204 and comment a (2006). The change in terminology does not affect the role of retained control in determining the liability of a principal for the failure of his or her agent to exercise reasonable care.

contractor's negligence, except where the employer retained some control over the manner in which the work was performed." *Herbert A. Sullivan, Inc.* v. *Utica Mut. Ins. Co.*, *supra* at 407. "Whether an employer has sufficient control over part of the work of an independent contractor to render him liable . . . is a question of fact for the jury." *Corsetti* v. *Stone Co.*, *supra* at 11. Separately, if a principal has actual knowledge of the unsuitability of an agent, the principal may be held liable for his own negligence in the selection of an unsuitable agent to take action on his behalf. See *Peters* v. *Haymarket Leasing, Inc.*, 64 Mass. App. Ct. 767, 771 (2005).

The judge's instruction in the present case, see note 9, *supra*, did not ask the jury to determine whether the relationship between the plaintiff and Lau was one of master-servant or whether Lau instead acted as an independent contractor, with regard to Lau's services looking after the property on the plaintiff's behalf. In addition, the judge's instruction essentially advised the jury to impute to the plaintiff any and all negligence by Lau in carrying out the caretaking duties the plaintiff assigned to him, without regard to the degree of control the plaintiff retained over Lau's actions on the plaintiff's behalf.[11] We consider whether the error was prejudicial.

Though Lau initially undertook his caretaking duties concerning the property ancillary to his role as manager of the plaintiff's restaurant, he was no longer employed in that capacity by the fall of 2006, and testified that he continued to manage the property after the restaurant closed "as a friend" to the plaintiff. The evidence accordingly would have permitted a rational jury to conclude that the relationship between plaintiff and Lau was not one of master-servant at the time of the loss, and that Lau instead was serving as an independent contractor.[12] The evidence likewise contains unresolved issues of fact concerning the extent of the plaintiff's control over Lau's activities. Finally, there was evidence that would have allowed a rational jury to conclude

---

[11] Though we prescribe no particular form of instruction in the circumstances, useful guidance may be found in *Kelly* v. *Foxboro Realty Assocs., LLC*, 454 Mass. 306, 315-316 (2009).

[12] It is immaterial for this purpose whether Lau was compensated for his services or furnished them gratuitously. See Restatement (Second) Torts § 409 comment a (1965); Restatement (Third) of Agency § 1.04 (2006).

either that the plaintiff was negligent in his selection and supervision of Lau, or that the plaintiff exercised reasonable care in choosing, supervising and relying on Lau. The judgment accordingly must be reversed.

We address briefly a second claim of error raised by the plaintiff, since it could recur in a retrial. The plaintiff contends that the trial judge erred in her instruction to the jury on the meaning of the term "unoccupied" appearing in the exclusion.[13] The plaintiff contends that the judge improperly failed to construe the term as a matter of law, instead leaving it to the jury to interpret the meaning of the insurance policy. See *Boazova* v. *Safety Ins. Co.*, 462 Mass. 346, 350 (2012) ("[t]he proper interpretation of an insurance policy is a matter of law to be decided by a court, not a jury"). Alternatively, the plaintiff sug-

---

[13]The judge instructed the jury as follows:

"So I cannot give you a precise definition of what the word unoccupied means, because frankly there is not one in law. It is a matter that is to be determined using your own good common sense and applying that to the facts as you determine them to be in this case, based on the evidence. I can give you some guidance and I will tell you that unoccupied means that no person is presently utilizing the premises as a dwelling.

"The presence of personal property alone is not sufficient to render property occupied. Rather there must be some intent that the premises is utilized as a dwelling for it to be considered occupied. Now unoccupied may include short periods of time, even where the occupant intends to return, as in the case of a vacation home.

"The term unoccupied is not defined in the insurance policy either, and that's frankly not unusual. It's not defined. It's not defined at law any more than what I'm suggesting to you. But the term unoccupied means that no person is presently utilizing the premises as a dwelling.

"Now temporary absence from the premises is not sufficient to render the premises unoccupied if the occupant leaves the premises with the intent to return to it as a dwelling place. By this what I mean, ladies and gentlemen, is what common sense would tell you.

"Every time you leave your house you are not leaving it in a state that the law would say is unoccupied every time you walk out the door. Instead you should evaluate in this case whether the house was being used as a dwelling place at the time of the loss, and whether it was occupied as such.

"You may evaluate all of the credible evidence and the reasonable inferences that you choose to draw from the evidence and determine whether the house was occupied or unoccupied. Now by the same token you cannot simply abandon your house and expect that it will be viewed as occupied because at some point you may intend later to return to it and utilize it as a dwelling at some point in the future."

gests, the term "unoccupied" is ambiguous, so that the judge should have instructed the jury that ambiguities in an insurance contract should be resolved against the insurer and in favor of the insured. See *Hingham Mut. Fire Ins. Co.* v. *Mercurio*, 71 Mass. App. Ct. 21, 24 (2008).

In our view, the judge's instruction was essentially correct. The judge explained that "unoccupied means that no person is presently utilizing the premises as a dwelling." The judge further clarified that a building may be unoccupied for "short periods of time, even where the occupant intends to return, as in the case of a vacation home," and that "[e]very time you leave your house you are not leaving it in a state that the law would say is unoccupied every time you walk out the door. Instead you should evaluate in this case whether the house was being used as a dwelling place at the time of the loss, and whether it was occupied as such." The guidance the judge furnished to the jury essentially correctly framed the meaning of the term in the context of the insurance contract.[14] See, e.g., *McCabe* v. *Allstate Ins. Co.*, 260 A.D.2d 850, 852 (N.Y. 1999). To be sure, the judge's comments, twice repeated, that the term has no definition in the law, coupled with the judge's suggestion that jurors resort to their "own good common sense," might have suggested to the jurors that they held greater latitude to interpret the terms of the contract than they did; such comments should be avoided in the event the case is retried. On the whole, however, we agree with the defendant that the term "unoccupied" is not ambiguous, and that the judge's guidance accurately conveyed its meaning to the jury.

*Conclusion.* The judgment is reversed, and the verdict set aside. The case is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*

---

[14]We note that Black's Law Dictionary 1688 (9th ed. 2009) includes the following observation in its definition of "vacant": "Courts have sometimes distinguished *vacant* from *unoccupied*, holding that *vacant* means completely empty while *unoccupied* means not routinely characterized by the presence of human beings" (emphasis in original).