FRANK D. PASSANESSI *vs.* C. J. MANEY CO., INC.

Suffolk. February 2, 1960. — March 24, 1960.

Present: WILKINS, C.J., SPALDING, WILLIAMS, WHITTEMORE, & CUTTER, JJ.

*Evidence,* Relevancy and materiality, Judicial discretion, Collateral issues, Opinion, Regulation, Best and secondary, Judicial notice. *Practice, Civil,* Exceptions: whether error harmful. *Error,* Whether error harmful. *Regulation.*

At the trial of an action against a contractor for damage to property flooded by water when a street water main of a city broke by reason of the defendant's alleged negligence in installing a culvert under the main, where the defendant contended that the break resulted from a

deterioration of the main, which had broken on numerous occasions, there was no abuse of discretion on the part of the trial judge in excluding reports of the public works department of the city which showed no more than leaks in or sagging of the main in the general vicinity of the break that caused the damage, or which related to that break but contained opinions of employees of the department, or which merely concerned the digging of "test holes." [601–603]

At the trial of an action against a contractor for damage to property flooded by water when a street water main of a city broke by reason of the defendant's alleged negligence in installing a culvert under the main, there was error prejudicial to the defendant in permitting a witness to testify that there was a regulation of the public works department of the city that "there shall be no pipes placed closer than twelve inches to a water pipe in all directions . . . That is the sum and substance": if such regulation was oral, it was not admissible; if it was written, a copy of it should have been introduced in evidence. [603–604]

Judicial notice will not be taken of a regulation of a municipal department. [604]

At the trial of an action against a contractor for damage to property flooded by water when a street water main of a city broke by reason of the defendant's alleged negligence in installing a culvert under the main, there was error prejudicial to the defendant in admitting in evidence a sticker which an engineer of the department of public works of the city testified he would have appended to the defendant's permit to excavate in the street if the witness had approved the defendant's application for the permit, and which contained the statement "Location approved with the distinct understanding that no masonry, concrete, duct or pipe shall be placed nearer than one foot of a water pipe," where there was no foundation laid that the statement in the sticker was a copy of any regulation of the department and nothing on its face so indicated, and proper space between the culvert and the main was a material issue in the case. [604–606]

TORT. Writ in the Superior Court dated August 25, 1955.

The action was tried before *Morton,* J.

*Arthur M. Gilman,* for the defendant.

*Edward U. Lee,* for the plaintiff.

SPALDING, J. In this action of tort the plaintiff seeks to recover for damage to his property by reason of a broken water main alleged to have been caused by the defendant's negligence in installing a culvert. The case was referred to an auditor under the usual rule and he found for the plaintiff. Thereafter the case was tried to a jury on the auditor's report and other evidence, and the jury returned a verdict for the plaintiff. The case comes here on the defendant's

exceptions to several rulings on evidence and to portions of the charge. No questions bearing on liability are involved and we shall recite only so much of the evidence as is necessary to an understanding of the challenged rulings.

At some time in 1953 the defendant was engaged by the New York, New Haven and Hartford Railroad Company to install a culvert, a portion of which was to pass under Southhampton Street, Boston. On May 19, 1953, the city of Boston issued a permit to the defendant for the excavation of a part of Southampton Street. Work was commenced on the culvert in the summer of 1953, and was completed early in the fall of that year. A portion of the culvert ran under a thirty inch water main of the city of Boston. That part of the water main that was above the culvert rested on steel I beams installed by the defendant. When the concrete roof of the culvert was poured the bottoms of the I beams were embedded in the concrete.

Early in the morning of January 20, 1955, the water main broke and water filled the basement of the plaintiff's restaurant, causing damage to his property.

1. The theory of the plaintiff's case was that the defendant was negligent in suspending the water main directly on the I beams, and that such negligence resulted in the break. The defendant's position in part was that the break was not caused by its negligence but resulted from a deteriorated main which had broken on numerous occasions. In support of this position the defendant offered in evidence certain reports (ten in all) of the water division of the public works department of the city of Boston, and an annual report of that division. The reports were designated "A" to "J," inclusive, for identification and the annual report was designated "L" for identification. This evidence was excluded and the defendant made appropriate offers of proof and excepted to the rulings. Three of the reports, "A," "B," and "C," relate to the same incident, a repair job on the water main at Southampton Street in April, 1950. All that these reports reveal is that the "pipe sagged" and that twenty-five feet of new pipe was relaid. "F" refers to a

"leak outside gate box" on November 16, 1953; "G" to a "leak on 30″ main" in February, 1954; "H," dated November 24, 1954, to a "leak under bridge"; "I" to the digging of two test holes "to locate M T A duct line"; and "J," dated May 22, 1947, to a "leak in south sleeve." All of the foregoing incidents occurred in the general vicinity of Southampton Street where the defendant's installation was done.

"D," "E," and "L" refer to work done by reason of the break on January 20, 1955, which is the basis of the present action. "E" reveals nothing more than that there was repair work on the thirty inch main. "D" contains a statement that the cause of the break was "blow-offs," and "L" in one place attributes the cause of the break to "defective blow-off" and in another place to "pipe resting on new sewer."

We assume, without deciding, that the reports satisfy the public record or official statement (as it is sometimes called) exception to the hearsay rule. See *Commonwealth* v. *Slavski,* 245 Mass. 405, 417; *Commonwealth* v. *Dorr,* 216 Mass. 314, 319; Wigmore on Evidence (3d ed.) § 1633 (1). Compare *Allen* v. *Kidd,* 197 Mass. 256, 259; *Fondi* v. *Boston Mut. Life Ins. Co.* 224 Mass. 6, 8; *Amory* v. *Commonwealth,* 321 Mass. 240, 252–253. Most of the excluded reports show no more than the fact of a leak in the main or a sagged pipe in the general vicinity of where the leak in question occurred. That is true of "A," "B," "C," "F," "G," "H," and "J." "I" does not even show that; it shows only that two "test holes" were dug, and need not concern us further. We assume that evidence of this type could be admissible for the purpose offered. But without further evidence showing the causes and circumstances of these leaks the excluded evidence would have slight, if any, probative value. And, if additional evidence of the causes and circumstances were to be introduced, there would be the danger of confusion or of unreasonable expenditure of time in the trial of collateral issues. Generally the admissibility of such evidence has been left to the wise discretion of the trial judge. He is in a better position than anyone else to determine the relevancy

of such evidence and whether it will unduly prolong the trial or confuse the jury with collateral issues. For a good discussion of this subject with an exhaustive collection of authorities, see opinion of Lummus, J., in *Robitaille* v. *Netoco Community Theatre of No. Attleboro, Inc.* 305 Mass. 265, 266–269. See also *Guidara & Terenzio Inc.* v. *R. Guastavino Co.* 286 Mass. 502, 503.

We are of opinion that under the principles just stated the judge did not err in excluding exhibits for identification "A," "B," "C," "F," "G," "H," "I," and "J." Nor was there any error in the exclusion of "D," "E," and "L," which related to the leak in question. "E" contained nothing of any consequence. "D" and "L" added little or nothing to the testimony of employees of the water division, and were objectionable for the further reason that they contained opinions. In *Commonwealth* v. *Slavski*, 245 Mass. 405, it was stated by Rugg, C.J., at page 417, that, although there might be exceptions, the general rule was that "records . . . by public officers concerning causes and effects involving the exercise of judgment and discretion, expressions of opinion, and making conclusions are not admissible in evidence as public records."

2. One Campbell (a superintendent in the water division of the Boston public works department) was called by the plaintiff and was permitted to testify that there was a regulation of the public works department which provided "that there shall be no pipes placed closer than twelve inches to a water pipe in all directions, so that we can get at the water pipe to repair it or relay it. That is the sum and substance." No written proof of the regulation was offered; nor was such proof introduced later.[1] The defendant seasonably saved its rights to the admission of this evidence on the ground that it was an attempt to prove the contents of a regulation by oral evidence rather than by the regulation itself. This evidence related to an important issue in the trial and if it was erroneously admitted it was prejudicial to the defendant.

---

[1] The sticker (exhibit 8) discussed later under part 3 was not such evidence for reasons there appearing.

We are of opinion that it was error to permit proof of the regulation in this manner. Courts do not take judicial notice of regulations; they must be put in evidence. *Finlay* v. *Eastern Racing Assn. Inc.* 308 Mass. 20, 27. *Diaduk's Case*, 336 Mass. 5, 7. If, as seems unlikely, the regulation was oral, it was not admissible. In this respect the situation closely resembles that of an oral rule. In *Gerry* v. *Worcester Consol. St. Ry.* 248 Mass. 559, it was held that oral rules of a street railway company were inadmissible. It was said at page 565, "The existence of written or printed rules can be easily established. Oral rules resting in the memory or recollection of witnesses might be difficult to prove. Evidence concerning them might be uncertain and contradictory, and would tend to prolong the trial of a case and divert the attention of the jury from the issues involved. A rule for the guidance of employees in matters affecting the safety of others must be made known to them; it must be published." This reasoning is equally applicable to regulations of a city, town or governmental agency.

If, on the other hand, the regulation was written, the proof of it ought not to have been by oral evidence; the written regulation itself was the best evidence and should have been introduced. The proof of printed regulations has been made easy by statute (see G. L. c. 233, § 75); the printed regulation should be put in evidence, unless shown to be unavailable, which is not the case here. Often much might depend on the precise wording of the regulation. The exception to this evidence must be sustained.

3. The defendant, prior to excavating Southampton Street, applied for and was granted a permit to excavate by the public works department of Boston. One Pinkul, principal engineer of the water division of that department, was called by the plaintiff, and in response to a series of questions by the plaintiff's counsel he described the procedure in connection with the granting of a permit to excavate a street. He was shown the permit (exhibit 1) to excavate Southampton Street, which had been issued by the city to the defendant, and stated that he had never seen

it before, but that if he had approved the defendant's application for the permit he would have appended a sticker that "we append to all approved plans." The sticker, on which there was printed matter, was then admitted in evidence, as what "the witness says would have been appended to an approved application for [a] permit." All of this evidence was subject to the defendant's objection and exception. The sticker bore the caption "City of Boston — Public Works Department — Water Division," and contained, among other provisions, the following: "Location approved with the distinct understanding that no masonry, concrete, duct or pipe shall be placed nearer than one foot of a water pipe."

The plaintiff seeks to support the admission of the sticker on the ground that it was a regulation of the public works department and hence was admissible under G. L. c. 233, § 75, which provides in part that "Printed copies of rules and regulations purporting to be issued by authority of any department . . . of any city or town having authority to adopt them . . . shall be admitted without certification or attestation, but, if their genuineness is questioned, the court may require such certification or attestation thereof as it deems necessary." We assume that the sticker could be a printed copy of a regulation. But the plaintiff failed to lay any foundation that the sticker was a copy of any regulation, and there is nothing on the face of the sticker that indicates that it was such. Thus, it cannot be said to be a printed copy of a regulation "purporting to be issued" by the public works department.

Conceivably the admission of the sticker might be justified on the ground that, since it was customary for such sticker to be appended to all applications, an inference might arise that a sticker was appended to the application here. See *Santarpio* v. *New York Life Ins. Co.* 301 Mass. 207, 209. But the contents of the sticker were not shown to have the force of a regulation, and, whether or not it was customarily attached to permits, it had no relevancy, and ought to have been excluded. This evidence related to an

important issue in the case (whether the proper space was maintained between the culvert and the water main) and it could very well have been harmful to the defendant.

4. The remaining exceptions arise out of certain statements by the judge in his charge, which the defendant contends amounted to a charge on the facts in violation of G. L. c. 231, § 81. But these are questions that are not likely to arise on a retrial of the case and do not require discussion.

*Exceptions sustained.*