NOTICE: All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports. If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

14-P-1169                                      Appeals Court

COMMONWEALTH vs. LEONIDES BONES.

No. 14-P-1169.

Suffolk.      September 14, 2017. - August 3, 2018.

Present: Wolohojian, Agnes, & Wendlandt, JJ.

Controlled Substances. Practice, Criminal, Motion to suppress, Required finding, New trial, Assistance of counsel, Argument by prosecutor. Evidence, Judicial notice. Municipal Corporations, By-laws and ordinances. Witness, Impeachment.

Indictments found and returned in the Superior Court Department on June 19, 2012.

A pretrial motion to suppress evidence was heard by Janet L. Sanders, J.; the cases were tried before her; and a motion for a new trial was considered by her.

Brad P. Bennion for the defendant.
Darcy A. Jordan, Assistant District Attorney (Patrick R. Mulligan, Assistant District Attorney, also present) for the Commonwealth.

AGNES, J.  This is an appeal by the defendant, Leonides Bones, from his conviction, after a trial by jury, of possession of a class A controlled substance with intent to distribute, see G. L. c. 94C, § 34, and, following a subsequent jury-waived trial conducted in accordance with G. L. c. 278, § 11A, of being a second or subsequent offender.[1]  The defendant argues that his motion to suppress was improperly denied because the police were not justified in stopping him on a public sidewalk for drinking an alcoholic beverage as that conduct is not a criminal violation under State or local law.  The defendant further argues that even if the motion to suppress was properly denied, there was insufficient evidence presented at trial to permit the jury to infer that he intended to distribute the heroin found on his person.  Finally, the defendant also appeals the order denying his motion for a new trial arguing that his motion was improperly denied.  For the reasons set forth below, we affirm.

The relevant facts are set forth in connection with each of the defendant's several arguments.

---

[1] The jury also found the defendant guilty of possession of a class A controlled substance with intent to distribute in a school zone, see G. L. c. 94C, § 32J, but the judge ordered that a not guilty finding be entered as to that conviction after concluding that St. 2012, c. 192, § 30, which reduced the school zone area from 1,000 feet to 300 feet, was applicable.

Discussion. 1. Motion to suppress. The defendant does not take issue with the facts found by the motion judge, which are supported by the evidence.

On April 4, 2012, Sergeant Brian Dunn, then a patrolman with the Chelsea police department, was in uniform and operating a marked cruiser when he responded to a call from a party reporting possible drug activity. The caller reported that the offender was a black male wearing a white T-shirt, shorts, and a hat. On Division Street, in the vicinity of Bellingham Square, Sergeant Dunn observed a black male matching the caller's description. From prior encounters, Sergeant Dunn recognized the man as the defendant. Sergeant Dunn observed the defendant "drinking out of a nip type bottle of alcohol" while he was walking down the sidewalk. Sergeant Dunn stopped his cruiser and got out to speak with the defendant. After seeing Sergeant Dunn approach, the defendant said, "I'm sorry, I didn't see you. I'll dump it out," and began dumping contents of the bottle of alcohol onto the sidewalk. Sergeant Dunn did not order the defendant to stop drinking the alcohol or make any other show of authority. Sergeant Dunn testified without objection that "drinking alcohol in public is an arrestable offense in the [c]ity of Chelsea." He then detained the defendant to see whether he had any active warrants. After determining that the defendant did have an active warrant for his arrest, Sergeant

Dunn and other officers who had arrived on scene arrested the defendant on the warrant and transported him to Chelsea police headquarters.

At the police station, the officers conducted an inventory of the defendant's personal property.  The defendant had $209 on his person.  The currency was separated into bundles of small denominations "like a stack of [fifteen dollars], a stack of [twenty dollars], a stack of [fifteen dollars], like that in each pocket."  Sergeant Dunn testified that he had seen United States currency bundled like that in the past "and it's usually that way when it's involved in drug activity."  In accordance with departmental policy, the officers removed the defendant's shoes and took his belt before he was placed in a cell.  The officers noticed a bulge protruding from the defendant's sock; when asked what it was, the defendant removed his sock and threw it to the floor.  In his sock, the police found a large plastic bag filled with fifteen individually wrapped smaller bags of heroin.[2]

---

[2] At oral argument, the defendant waived any challenge to the validity of the seizure of his sock at the police station. In view of the judge's finding that the defendant removed his sock and threw it to the cell floor when the police asked him about the bulge, the seizure did not constitute a search.  See Commonwealth v. Battle, 365 Mass. 472, 475 (1974).

The defendant's argument on appeal is that Sergeant Dunn was not justified in detaining him to check for warrants because drinking in public is not a crime under either the General Laws of the Commonwealth or the ordinances of the city of Chelsea. The defendant relies for support on a document that appears in an addendum to his brief on appeal, which he describes as the pertinent city of Chelsea ordinance. The same material appears in the Commonwealth's brief on appeal. A copy of the city of Chelsea ordinance was not offered in evidence during the hearing on the motion to suppress.

The defendant's argument fails for several reasons. First and foremost, the defendant overlooks the testimony by Sergeant Dunn, credited by the judge, that drinking an alcoholic beverage on the street or a sidewalk in the city of Chelsea is a criminal offense. In Massachusetts, the contents of a municipal bylaw or ordinance may be proved by oral testimony. See Commonwealth v. Rushin, 56 Mass. App. Ct. 515, 518 & n.6 (2002) (officer's testimony that defendant's drinking can of beer while sitting in car violated city ordinance was sufficient to prove contents of municipal law). Contrast Commonwealth v. Perretti, 20 Mass. App. Ct. 36, 40 (1985) (criminal conviction for violating municipal ordinance proscribing "peeping and spying" was invalid because there was no evidence of contents of ordinance either in oral or documentary form). Here, Sergeant Dunn testified

without objection that in the city of Chelsea, drinking alcohol in public is an arrestable offense. See G. L. c. 272, § 59, as appearing in St. 1981, c. 629 (providing that person who, in public, willfully violates ordinance "the substance of which is the drinking or possession of alcoholic beverage," is subject to arrest). See also Commonwealth v. Jones, 83 Mass. App. Ct. 296, 296 n.1 (21013). The detention of the defendant for purposes of conducting a check for active warrants therefore was valid, because Sergeant Dunn had probable cause to arrest the defendant for violating the ordinance prior to his detention. See Commonwealth v. Charros, 443 Mass. 752, 765 (2005). Accordingly, Sergeant Dunn's subsequent arrest of the defendant based on an outstanding warrant was valid. For these reasons, the defendant's motion to suppress properly was denied.

While what has been said is sufficient to dispose of the defendant's argument that he was unlawfully detained before the police discovered there was an outstanding warrant for his arrest, we add this additional observation about municipal ordinances and bylaws. Courts are required to take judicial notice of the General Laws of the Commonwealth, statutes, and other public acts of the Legislature, the common law, rules of court, the Code of Massachusetts Regulations, and Federal statutes. Furthermore, courts will take judicial notice of the contents of Federal regulations, the laws of foreign

jurisdictions, legislative history, and municipal charters and charter amendments when this material is called to their attention.  See Mass. G. Evid. § 202(a)(1) & (2) (2018).  However, the general rule here in Massachusetts is that in the absence of statutory authorization, a court will not take judicial notice of a municipal ordinance.  E.g., Brodsky v. Fine, 263 Mass. 51, 54 (1928); Russell v. New Bedford, 74 Mass. App. Ct. 715, 722 (2009).  See Mass. G. Evid. § 202(c) (2018).[3]

The law has traditionally treated municipal ordinances as a "peculiar species of fact, requiring formal proof" because those materials tended to not be readily available to judges. 2 McCormick on Evidence § 335, at 334 (K.S. Broun ed., 7th ed. 2013).  See, e.g., Passanessi v. C.J. Maney Co., 340 Mass. 599, 604 (1960); Peters v. Haymarket Leasing, 64 Mass. App. Ct. 767, 775 n.11 (2005).  Ordinarily, the contents of a municipal ordinance or bylaw is proved by offering an attested copy of the same as an exhibit.  See Mariano v. Building Inspector of Marlborough, 353 Mass. 663, 666 (1968), citing G. L. c. 233, § 75.  At least one noted authority on the law of evidence has

---

[3] For the national perspective, see 6 McQuillen, Municipal Corporations § 22.18 (3d ed. Supp. 2017) (collecting cases); 2 Wharton's Criminal Evidence § 5:34 (15th ed. Supp. 2017) (same); Jones on Evidence § 2:85 (7th ed. Supp. 2017) (same); 2 Sutherland, Statutory Construction § 39.5 (7th ed. & Supp. 2017-2018) (same).

observed "that as these materials become more accessible, the tendency is toward permitting the judges to do what perhaps they should have done in the beginning, that is, to rely on the diligence of counsel to provide the necessary materials, and accordingly to take judicial notice of all law."  2 McCormick on Evidence, supra.  We have noted that "reliable versions of municipal ordinances and by-laws now may be as generally accessible as statutes."  Halbach v. Normandy Real Estate Partners, 90 Mass. App. Ct. 669, 675 n.5 (2016).[4]  The time may have come for the rule prohibiting judicial notice of municipal ordinance and bylaws to be revisited by the Supreme Judicial Court.

Even if we were to consider the material that both parties have included in their briefs and described as the city of Chelsea ordinance, it is not inconsistent with Sergeant Dunn's testimony that drinking in public is a criminal offense in Chelsea.  The defendant misunderstands language in that material that provides a civil alternative to what otherwise would be a criminal violation.  A municipal ordinance or bylaw that provides a criminal penalty for a violation by, for example,

---

[4] See, e.g., https://www.mass.gov/guides/massachusetts-city-and-town-ordinances-and-bylaws [https://perma.cc/K6BT-7XAB] (comprehensive collection of Massachusetts city and town ordinances and bylaws prepared by trial court law libraries).

setting forth a schedule of fines, may also provide for a noncriminal, civil disposition of the violation.  See G. L. c. 40, § 21D.[5]  See also G. L. c. 277, § 70C.[6]  The existence of

_____

[5] General Laws c. 40, § 21D, as amended by St. 1992, c. 133, § 370, provides, in pertinent part:

> "Any city or town may by ordinance or by-law not inconsistent with this section provide for non-criminal disposition of violations of any ordinance or by-law or any rule or regulation of any municipal officer, board or department the violation of which is subject to a specific penalty.

> "Any such ordinance or by-law shall provide that any person taking cognizance of a violation of a specific ordinance, by-law, rule or regulation which he is empowered to enforce, hereinafter referred to as the enforcing person, as an alternative to initiating criminal proceedings shall, or, if so provided in such ordinance or by-law, may, give to the offender a written notice to appear before the clerk of the district court having jurisdiction thereof at any time during office hours, not later than twenty-one days after the date of such notice.... Such notice shall be signed by the enforcing person, and shall be signed by the offender whenever practicable in acknowledgment that such notice has been received.

> "The enforcing person shall, if possible, deliver to the offender a copy of said notice at the time and place of the violation. If it is not possible to deliver a copy of said notice to the offender at the time and place of the violation, said copy shall be mailed or delivered by the enforcing person, or by his commanding officer or the head of his department or by any person authorized by such commanding officer, department or head to the offender's last known address, within fifteen days after said violation. Such notice as so mailed shall be deemed a sufficient notice, and a certificate of the person so mailing such notice that it has been mailed in accordance with this section shall be prima facie evidence thereof."

[6] General Laws c. 277, § 70C, as amended through St. 2005, c. 54, § 3, provides in part that "[u]pon oral motion by the

an alternative civil process for the disposition of a violation of an ordinance or bylaw establishing criminal liability does not mean that the police cannot proceed with enforcement of the criminal sanction by subjecting violators to arrest pursuant to G. L. c. 272, § 59.  See Commonwealth v. Weston W., 455 Mass. 24, 29 (2009).  Contrast, G. L. c. 94C, § 32N (directing police departments to enforce G. L. c. 94C, § 32L [possession of less than one ounce of marijuana] in accordance with the noncriminal provisions of G. L. c. 40, § 21).[7]

2.  Sufficiency of the evidence.  The defendant next argues that the evidence presented against him at trial was not sufficient to prove beyond a reasonable doubt that he intended to distribute the heroin found in his sock at booking.  We disagree.

---

commonwealth or the defendant at arraignment or pretrial conference, or upon the court's own motion at any time, the court may, unless the commonwealth objects, in writing, stating the reasons for such objection, treat a violation of a municipal ordinance, or by-law or a misdemeanor offense as a civil infraction."  There are a series of criminal statutes listed in § 70C which are exempted from this alternative procedure.

[7] Because Sergeant Dunn had the authority to arrest the defendant for drinking alcohol in public in violation of the Chelsea city ordinance, the defendant's claim that trial counsel was ineffective for failing to discover that it was not an arrestable offense must fail.  See Commonwealth v. Eddington, 71 Mass. App. Ct. 138, 147 (2008).

In reviewing the sufficiency of the evidence, the question is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Commonwealth v. Latimore, 378 Mass. 671, 677 (1979), quoting from Jackson v. Virginia, 443 U.S. 307, 319 (1979). "Intent is a factual matter that may be proved by circumstantial evidence." Commonwealth v. Gonzales, 33 Mass. App. Ct. 728, 731 (1992), quoting from Commonwealth v. LaPerle, 19 Mass. App. Ct. 424, 427 (1985).

Here, the defendant was found in possession of 1.49 grams of heroin.[8] However, "[t]he fact that the amount of drugs seized was small does not, by itself, require a finding of not guilty to so much of the indictment as states 'intent to distribute.' A dealer's inventory of drugs may have been reduced before his arrest to a small amount by a number of sales." Ibid. A detective with the Chelsea police department provided expert testimony indicating that the manner in which the drugs were packaged -- fifteen individually wrapped plastic bags inside of a larger plastic bag -- was consistent with possession with an intent to distribute. See ibid. (ten glassine bags bundled by

---

[8] A Chelsea police detective testified that the street value of the drugs at the time of the defendant's arrest was approximately $300.

elastic band evidence of intent to distribute).  Moreover, the detective testified without objection that in his experience, someone possessing drugs for personal use in Chelsea would typically have the drugs in a single bag and would also possess paraphernalia to use the drugs.  The defendant was not found with any paraphernalia on his person that would allow him to inject or otherwise ingest the heroin.  See Commonwealth v. Labitue, 49 Mass. App. Ct. 913, 914 (2000).  The detective further described the area in which the defendant was arrested as a high drug activity area.  See Commonwealth v. Dancy, 75 Mass. App. Ct. 175, 178 (2009).  Finally, the defendant was found with $209, $100 of which was located in his wallet, and $109 of which was located in his pocket and stacked in fifteen and twenty dollar denominations, which is consistent with the detective's testimony that each baggie of heroin possessed by the defendant had an approximate street value of twenty dollars.  See Commonwealth v. Arias, 29 Mass. App. Ct. 613, 619 n.10 (1990).

Based on the foregoing, the Commonwealth presented sufficient evidence to prove beyond a reasonable doubt that the defendant possessed the heroin with the intent to distribute and the defendant's motion for a required finding of not guilty was properly denied.

3. <u>Motion for a new trial</u>. The defendant argues that his motion for a new trial was improperly denied by the motion judge, who also presided over the defendant's trial.

A judge "may grant a new trial at any time if it appears that justice may not have been done." Mass.R.Crim.P. 30(b), 365 Mass. 780 (1974). Our review of a decision to deny a motion for a new trial is limited to determining whether the motion judge "committed an abuse of discretion or a significant error of law." <u>Commonwealth</u> v. <u>Lys</u>, 91 Mass. App. Ct. 718, 720 (2017), quoting from <u>Commonwealth</u> v. <u>Dejesus</u>, 468 Mass. 174, 178 (2014). We grant special deference to a judge's decision on a motion for a new trial where, as here, the motion judge also acted as the trial judge. See <u>ibid</u>.

a. <u>Ineffective assistance of counsel</u>. The defendant argues that trial counsel was ineffective for failing to introduce a Social Security letter indicating that he began receiving Social Security benefits in the amount of $993 per month in December, 2012, and other Social Security documents "show[ing] benefits to Mr. Bones over the years" as evidence of the defendant's income in an attempt to account for the money found on the defendant's person during booking.

A defendant complaining of ineffective assistance must establish (1) "serious incompetency, inefficiency, or inattention of counsel -- behavior of counsel falling measurably

below that which might be expected from an ordinary fallible lawyer . . ." and (2) that it "likely deprived the defendant of an otherwise available, substantial ground of defence." Commonwealth v. Saferian, 366 Mass. 89, 96 (1974). Here, the Commonwealth's argument in relation to the cash found on the defendant focused on the way in which the bills were folded in groups of fifteen or twenty dollars, suggestive of a series of individual transactions consistent with the testimony about the cost of an individual bag of heroin purchased on the street. The Commonwealth did not refer to the defendant's employment status, nor argue that due to being unemployed his possession of $209 in cash could not be explained other that by assuming it was the proceeds of illegal drug sales. Moreover, the prosecutor did not make any reference to the defendant's employment status in the Commonwealth's closing argument. Finally, the Social Security letter in the record before us does not cover the period during which the defendant was arrested, as the letter indicates that he began receiving Social Security benefits in December, 2012, and the defendant was arrested in April, 2012. The letter alone thus does not provide an alternative explanation as to how the defendant came to possess the money found on his person. While the defendant's trial counsel indicated in her affidavit that other Social Security records would have been helpful to the defendant had they been

introduced in evidence, the defendant has failed to prove how the contents of those records would have been helpful to the defense, or to show that such records even exist. The motion judge did not abuse her discretion in finding that defense counsel was not ineffective for failing to submit in evidence documents concerning the defendant's receipt of Social Security benefits.[9]

b. Testifying chemist's credentials. The defendant further argues that his motion for a new trial should have been allowed on the basis that newly discovered evidence cast doubt on the defendant's conviction. The defendant argues that the testifying chemist falsely asserted at trial that she earned a bachelor's degree in chemistry, when she was in fact awarded a bachelor's degree in sociology.[10]

---

[9] The defendant argued below that trial counsel was ineffective for failing to request a voir dire of the Chelsea police detective who testified as an expert witness at trial. The defendant concedes on appeal that a voir dire was in fact requested and held prior to the detective providing expert witness testimony. The defendant now attempts to argue that police witnesses should not be allowed to offer expert opinion testimony as to whether the drugs possessed by the defendant were consistent with an intent to distribute. There is no merit to the defendant's argument. See, e.g., Commonwealth v. Johnson, 410 Mass. 199, 202 (1991).

[10] The defendant provided both the motion judge and this court with transcripts from a motion hearing in a separate case involving the same chemist. Essentially, the chemist stated that she completed all the necessary degree requirements to earn a bachelor of science degree in chemistry, but, unbeknownst to her, the college she attended never awarded her the degree.

"A defendant seeking a new trial on the ground of newly discovered evidence must establish both that the evidence is newly discovered and that it casts real doubt on the justice of the conviction."  Commonwealth v. Grace, 397 Mass. 303, 305 (1986).  As the motion judge correctly found, even assuming that this is newly discovered evidence, see id. at 306 (newly discovered evidence is evidence not reasonably discoverable by defendant at time of trial), the information was, at best, impeachment evidence that does not rise to the level of requiring a new trial.  See Commonwealth v. Simmons, 417 Mass. 60, 72 (1994) ("Newly discovered evidence that tends merely to impeach the testimony of a witness does not ordinarily warrant a new trial").

c.  Commonwealth's closing argument.  The defendant makes numerous arguments relating to the propriety of the Commonwealth's closing argument, all of which lack precision. Our understanding of the defendant's argument is that the defendant objects to the following:  (1) the prosecutor's argument that it was unfair that the credibility of the testifying chemist and police officers was being undermined by Annie Dookhan's malfeasance, see Commonwealth v. Scott, 467 Mass. 336 (2013); (2) the prosecutor's statement that it is not

the jury's job "to give anybody a break"; and (3) the prosecutor's statement that Dookhan's misconduct and its aftermath are "a chilling thing for our whole society."

As for the defendant's first argument, the prosecutor is entitled to base his argument on the evidence and the fair inferences drawn therefrom. See Commonwealth v. Kozec, 399 Mass. 514, 516 (1987). Here, the defendant attempted to undermine the validity of the drug certificate and the testimony of the Commonwealth's witnesses by referencing the misconduct of Dookhan. The prosecutor properly argued that the evidence elicited at trial indicated that Dookhan did not taint the drug samples admitted in evidence, and that the chemist reported Dookhan's misconduct to her supervisor. The Commonwealth's closing argument was proper in this respect, as it was based on the evidence admitted at trial and the fair inferences drawn therefrom. The defendant's second argument must also fail because the prosecutor was entitled to argue that the evidence showed that the defendant was guilty in spite of Dookan's misconduct and that the jurors have a duty to make a determination as to the defendant's guilt based on the admissible evidence before them. See Commonwealth v. Payton, 35 Mass. App. Ct. 586, 597-598 (1993). Third, the prosecutor's statement that Dookhan's misconduct is a "chilling thing for our whole society" was best left unsaid, as it was arguably based on

the prosecutor's knowledge of events outside of the record in this case. However, we do not believe that this statement prejudiced the defendant because, as the evidence showed, Dookhan was not involved in the testing of the drugs in this case. Furthermore, the judge gave a strong curative instruction indicating that the evidence about Dookhan and the Hinton Drug lab were properly admitted as relevant to the issues before the jury in response to defense counsel's objection to this statement.[11] See Kozec, supra at 518. Finally, we note that the Commonwealth's closing argument, while critical of the defense mounted by the defendant, did not "constitute[] an overly aggressive response" to the defendant's challenging of the validity of the drug certificate and testimony of the chemist. Commonwealth v. Lopes, 478 Mass. 593, 607 (2018).

Judgment affirmed.

Order denying motion for new trial affirmed.

---

[11] During trial, defense counsel was permitted to offer evidence of Annie Dookhan's misconduct at the Hinton Drug lab, including testimony elicited during the recross-examination of the Commonwealth's expert indicating that the lab remained an active crime scene at the time of trial. The prosecutor was free to argue to the jury that Dookhan's misconduct had no bearing on the drug testing done in this case. However, insofar as the prosecutor's comments indicated to the jury that it simply should not consider the misconduct of Dookhan in the context of this case, the judge appropriately instructed the jury that the evidence was properly admitted and could be weighed and considered accordingly.